IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:19-CT-03204-BO

| | | |
|---|---|---|
| JERMAINE ANTWAN TART, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| JAMESE VIGUS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

This cause is before the court on the parties' cross motions for summary judgment. See Mot. [D.E. 47]; Mot. [D.E. 52]. These motions are ripe for review.

Relevant Procedural History:

On July 8, 2019, Jermaine Antwan Tart ("plaintiff"), a state inmate proceeding *pro se* and without prepayment of fees, filed this complaint under 42 U.S.C. § 1983. [D.E. 1, 2, 7].

Plaintiff generally alleges the following individuals at Tabor C.I. violated his First, Fourth, Fifth, Eighth, and Fourteenth Amendment rights: Unit Manager Jamese Vigus ("Vigus"); Assistant Unit Manager Mark Trock ("Trock"); Sergeant Bartolomeo ("Bartolomeo"); and Sergeant John Doe ("John Doe"). Compl. [D.E. 1] at 3–7. For relief, plaintiff seeks "punitive damages." Id. at 8.

On May 18, 2020, the court conducted its initial review, allowed plaintiff's Eighth Amendment conditions-of-confinement claims to proceed in part, but dismissed the remainder of the complaint for failure to state a claim upon which relief may be granted. See Order [D.E. 15].

On December 2, 2021, defendants moved for summary judgment, Mot. [D.E. 47], and filed a statement of material facts [D.E. 48], an appendix [D.E. 49], and a memorandum [D.E. 50].

Pursuant to Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam), the court notified plaintiff about the pending motion for summary judgment, the consequences of failing to respond, and the response deadline. [D.E. 51].

On January 4, 2022, plaintiff filed a cross motion for summary judgment, Mot. [D.E. 52], together with documents in support [D.E. 52-1].

On January 24, 2022, defendants filed a response in opposition. Defs.' Resp. [D.E. 53].

Statement of Facts:

The facts are substantially disputed. The parties generally agree that plaintiff was denied recreation at Tabor C.I. between August and October 2018, but they disagree as to the circumstances of this denial. Plaintiff alleges he was wrongly denied recreation in restrictive housing between August 6 and October 25, 2018, and defendants ignored his requests, stating that they "don't care," "you're not getting rec," and "go ahead and file your stupid lawsuits." See Compl. [D.E. 1] at 5–6.

Defendants Vigus and Trock, by contrast, declare: due to pleading guilty to August 6, 2018, disciplinary infractions for lock tampering and profane language, plaintiff lost his recreation privilege for 30 days; plaintiff then lost 30 additional days of recreation privilege after being found guilty of August 27, 2018, disciplinary infractions for profane language and disobeying orders; and this loss of recreation was due to plaintiff's behavior and imposed according to North Carolina Department of Public Safety ("DPS") and Tabor C.I. policies and procedures. Defs.' App., Ex. D, Vigus Decl. [D.E. 49-4] at ¶¶6–7; id., Ex. E, Trock Decl. [D.E. 49-5] at ¶¶6–7.

The record reflects plaintiff's out-of-cell recreation was revoked due to prison disciplinary proceedings. See Defs.' App., Ex. C [D.E. 49-3] (Aug. 20, 2018, DPS Offense and Disciplinary Report finding plaintiff guilty of profane language and lock tampering with an offense date of Aug.

2

6, 2018); id., Ex. F [D.E. 49-6] (Sept. 10, 2018, DPS Offense and Disciplinary Report finding plaintiff guilty of profane language and disobeying an order with an offense date of Aug. 27, 2018).

The parties also agree that, on September 4, 2018, Bartolomeo removed property from plaintiff's cell for several days, but they again disagree as to the details. Plaintiff alleges: on September 4, 2018, Bartolomeo removed all property from plaintiff's cell except for his boxer shorts and t-shirt; "all of [his] belongings were taken and not returned for over 72 hours"; the removed property included a mat, hygiene products, blankets, bedding, and towels/rags; he was only given a small amount of toilet tissue after he "was harassed and made to wait for hours"; his belongings were not properly inventoried; and, when his property was returned, his tennis shoes, magazines, four law books, and coffee from a care package were missing. Compl. [D.E. 1] at 5–6.

Bartolomeo declares: circa noon on September 4, 2018, plaintiff requested toilet tissue, paper, and envelopes; he told plaintiff he would get them, but plaintiff needed to wait; plaintiff started kicking the cell door; he gave plaintiff a direct order to stop kicking the door; plaintiff refused; he administered pepper spray to gain compliance; plaintiff was escorted to the shower for decontamination and to medical for assessment; an investigation found plaintiff admitted to kicking the cell door and concluded that "only the amount of force necessary to obtain the correctional objective was used"; plaintiff was placed on disruptive status on September 4, 2018, and subject to property forfeiture for up to 72 hours or, depending on his behavior, for an additional seven days under Tabor C.I. policy; and plaintiff was removed from disruptive status and all personal property was returned on September 7, 2018. Defs.' App., Ex. G, Bartolomeo Decl. [D.E. 49-7] at ¶¶7–15.

The record evidence generally supports Bartolomeo's declaration. See Defs.' App., Ex. I [D.E. 49-9] at 1–4 (Tabor C.I. Property Removal Procedures for Disruptive Offenders discussing

3

procedures for removal of inmate property for, among other things, kicking cell doors); see also id., Ex. H [D.E. 49-8] at 1–3 (Nov. 24, 2021, DPS Incident Report finding: the incident in question occurred circa noon on Sept. 4, 2018, after plaintiff kicked the door because he wanted "toilet tissue, paper and envelopes"; an investigation revealed that plaintiff acknowledged kicking the door; plaintiff "was removed from disruptive inmate procedures on 09/07/18 at approximately 1200 hours"; and that "[p]olicy and procedure was followed" and that "[n]o excessive force was used").

The parties disagree whether defendants' actions violate plaintiff's constitutional rights. Plaintiff asserts: defendants violated the Eighth Amendment; he experienced "severe psychological strain, emotional unstability [sic], [and] panic attacks"; he "had to request more medicine from the psychologist"; he "began punching walls"; he couldn't rest when his bedding was confiscated; and he suffered from "chest pains, numbness in limbs, [and] sore [knuckles]." Compl. [D.E. 1] at 7.

Bartolomeo, by contrast, declares he did not violate plaintiff's rights, "[p]laintiff's forfeiture of property was the result of his own behavior," and he acted "in accordance with [DPS] and Tabor C.I. policies and procedures." Defs.' App., Ex. G, Bartolomeo Decl. [D.E. 49-7] at ¶16. Vigus and Trock likewise declare that they did not violate plaintiff's constitutional rights and that they followed all appropriate DPS and Tabor C.I. policies and procedures as to the denial of out-of-cell exercise. Id., Ex. D, Vigus Decl. [D.E. 49-4] at ¶8; id., Ex. E, Trock Decl. [D.E. 49-5] at ¶8.

Parties' Arguments:

In support of their motion for summary judgment, defendants argue: plaintiff cannot show that defendants were deliberately indifferent to his health and safety; the loss of recreation privilege and property removal were caused by plaintiff's behavior, not defendants's actions; defendants are entitled to sovereign immunity as to official capacity claims; defendants are entitled to qualified

4

immunity as to individual capacity claims; and plaintiff's claims for punitive damages also fail. See Defs.' Mem. [D.E. 50] at 5–8.

In his cross motion for summary judgment, plaintiff argues that, although his recreation was denied pursuant to disciplinary infractions, "'Conditions of Confinement' policy shows that an inmate in any restricted housing format can only be restricted out of cell activities for 3 days without a 'Control Referral.'" Pl.'s Mot. [D.E. 52] at 1. Plaintiff contends "Control Referral" guidelines were not followed and, because he was not allowed out-of-cell exercise in shackles or "control restraints," his Eighth Amendment rights were violated. Id. at 1–2. Plaintiff attaches a printout of DPS "Conditions of Confinement" policy and procedure. Mot. Attach. [D.E. 52-1] at 11 (providing, *inter alia*, "control referral" guidelines for out-of-cell restrictions beyond 3 days including a hearing).

In opposition to plaintiff's cross motion for summary judgment, defendants argue that, because plaintiff has provided no sworn testimony or competent evidence in support of his cross motion for summary judgment or in opposition to defendant's motion for summary judgment, plaintiff likewise has neither established that defendants violated plaintiff's constitutional rights nor raised a genuine issue of material fact regarding the same. See Defs.' Resp. [D.E. 53].

Legal Standard:

Summary judgment is appropriate when, after reviewing the record as a whole, the court determines that no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment must initially demonstrate the absence of a genuine issue of material fact or the absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the

5

nonmoving party may not rest on the allegations or denials in its pleading, Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis and quotation omitted). A trial court reviewing a motion for summary judgment should determine whether a genuine issue of material fact exists for trial. See Anderson, 477 U.S. at 249. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. See Scott v. Harris, 550 U.S. 372, 378 (2007). "When cross-motions for summary judgment are before a court, the court examines each motion separately, employing the familiar standard under Rule 56 of the Rules of Civil Procedure." Desmond v. PNGI Charles Town Gaming, L.L.C., 630 F.3d 351, 354 (4th Cir. 2011).

Discussion:

First, because plaintiff has neither satisfied the filing requirements for a motion for summary judgment under Local Civil Rule 56.1, nor demonstrated that he is entitled to judgment as a matter of law pursuant to the standard of Federal Rule of Civil Procedure 56, the court DENIES plaintiff's cross motion for summary judgment [D.E. 52]. See Desmond, 630 F.3d at 354.

Turning to defendants' motion for summary judgment, plaintiff's claims against defendants in their official capacity are barred under the Eleventh Amendment unless the state has waived its immunity. See Will v. Michigan Dep't of State Police, 491 U.S. 58, 66, 71 (1989). Here, because North Carolina has not waived immunity, defendants are entitled to summary judgment as to claims for monetary damages against them in their official capacity. See Anderson, 477 U.S. at 249.

Next, "to make out a *prima facie* case that prison conditions violate the Eighth Amendment, a plaintiff must show both (1) a serious deprivation of a basic human need; and (2) deliberate

6

indifference to prison conditions on the part of prison officials." Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993) (quotation omitted). "[T]he first showing requires the court to determine whether the deprivation of the basic human need was objectively sufficiently serious." Id. (emphasis and quotation omitted). The second showing "requires [the court] to determine whether subjectively the officials acted with a sufficiently culpable state of mind." Id. (emphasis, alteration, and quotation omitted). To satisfy the second, subjective showing, a plaintiff must prove that the official acted with deliberate indifference. Id.; see Farmer v. Brennan, 511 U.S. 825, 835 (1994) ("[D]eliberate indifference entails something more than negligence . . . [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.").

The court considers plaintiff's denial of out-of-cell exercise claim under the totality of the circumstances. See Mitchell v. Rice, 954 F.2d 187, 191–92 (4th Cir. 1992) (adopting a "totality of the circumstances test," noting "we have never held that denial of out-of-cell exercise opportunities is per se unconstitutional cruel and unusual punishment," acknowledging that "generally a prisoner should be permitted some regular out-of-cell exercise," but recognizing "penological necessities may justify exercise restrictions in some circumstances"), cert. denied, 506 U.S. 905 (1992).

Here, the record shows plaintiff's out-of-cell recreation privilege was revoked pursuant to prison disciplinary proceedings. See Defs.' App., Ex. C [D.E. 49-3]; id., Ex. F [D.E. 49-6]. Plaintiff does not allege permanent revocation, or that he was unable to exercise in his cell during this revocation, and his bald allegations fail to provide evidence that he "sustained a[ ] serious or significant physical or emotional injury as a result of these conditions." Strickler, 989 F.2d at 1381.

Thus, as to denial of out-of-cell exercise, plaintiff fails to satisfy the objective component of an Eighth Amendment claim. See Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514,

7

522 (4th Cir. 2003) (noting "neither '[u]nsupported speculation,' nor evidence that is 'merely colorable' or 'not significantly probative,' will suffice to defeat a motion for summary judgment" (internal citations omitted)); Lyles v. Stirling, 844 F. App'x 651, 653 (4th Cir. 2021) (per curiam) (unpublished) ("[T]o establish an Eighth Amendment claim, not only must an inmate have suffered a serious deprivation, but he must also show 'a serious or significant physical or emotional injury resulting from the challenged conditions, or substantial risk thereof.'" (citations omitted)); Barnes v. Ramos, 2 F. App'x 507, 509 (7th Cir. 2001) (collecting cases to find inmate's 90-day out-of-cell exercise suspension via disciplinary proceedings falls short of a constitutional violation and did not "violate contemporary standards of decency"); see also Dozier v. Sanders, No. CIV.A. 3:09-2309, 2011 WL 846704, at *9–10 (D.S.C. Feb. 4, 2011) (collecting cases to find a three-month denial of out-of-cell exercise is not a constitutional violation where inmate fails to show any serious or significant injury or allege inability to exercise within his cell), report and recommendation adopted, No. C.A. 3:09-2309-JMC, 2011 WL 846698 (D.S.C. Mar. 9, 2011), aff'd, 441 F. App'x 975 (4th Cir. 2011); Nelson v. Jones, No. 2:17-CV-00815-RBH, 2018 WL 3633897, at *4 (D.S.C. July 31, 2018) (granting defendant summary judgment as to seven-week denial of out-of-cell exercise where inmate failed to produce evidence of a "serious or significant physical or emotional injury" (quoting Strickler, 989 F.2d at 1381); Young v. Bishop, No. CV TDC-16-0242, 2017 WL 784664, at *6–7 (D. Md. Feb. 28, 2017) (unpublished) (finding pretrial detainee's "60 days of cell restriction–and the resulting reduction in recreation time" did not amount to a constitutional violation because the restrictions were "reasonably related to the institution's interest in maintaining jail security"); Paylor v. Lewis, No. 5:12-CT-3103-FL, 2016 WL 1092612, at *10 (E.D.N.C. Mar. 21, 2016) (granting defendants summary judgment where inmate, *inter alia*, failed to show he suffered from a significant

8

mental or emotional injury necessary to satisfy the objective prong of the Eighth Amendment test in a denial of outdoor exercise claim); cf. Rivera v. Mathena, 795 F. App'x 169, 175 (4th Cir. 2019) (per curiam) (unpublished) (finding inmate's injury evidence sufficient to establish genuine issues of material fact as to the objective prong of an Eighth Amendment conditions-of-confinement claim).

Although plaintiff contends restricted custody inmates are entitled to "mandatory" out-of-cell exercise, even if in shackles, and that "Control Referral" guidelines for activity restrictions were not followed, see Pl.'s Mot. [D.E. 52] at 1–2, because his out-of-cell exercise denial did not rise to the level of a constitutional violation, claims premised on defendants' purported policy violations also fail. See Jackson v. Sampson, 536 F. App'x 356, 357 (4th Cir. 2013) (per curiam) (unpublished) ("[P]rison officials' failure to follow internal prison policies are not actionable under § 1983 unless the alleged breach of policy rises to the level of a constitutional violation." (citations omitted)).

As to plaintiff's claims about the September 4, 2018, removal of his property, as noted above, the record supports Bartolomeo's declaration that the removal was in accordance with appropriate policies and procedures. See Defs.' App., Ex. G, Bartolomeo Decl. [D.E. 49-7] at ¶16; id., Ex. I [D.E. 49-9] at 1–4; id., Ex. H [D.E. 49-8] at 1–3. Plaintiff's claims regarding loss of personal property were previously dismissed. See Order [D.E. 15] at 4, 8. Plaintiff's bald claims that Bartolomeo made him wait hours for toilet tissue, "harassed" him, and retained his property longer than permitted are either unsupported or contradicted by the record. See Scott, 550 U.S. at 380 ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."); Bouchat, 346 F.3d at 522. Although plaintiff alleges he could not rest when his bedding was confiscated, and that he suffered from "chest

9

pains, numbness in limbs, [and] sore [knuckles]," see Compl. [D.E. 1] at 7, plaintiff again fails to demonstrate a significant physical or emotional injury as a result of the alleged conditions, and these bald allegations otherwise are insufficiently substantially serious to satisfy the objective prong of an Eighth Amendment claim. See Strickler, 989 F.2d at 1379–81; De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003) (noting only "extreme deprivations" – *i.e.*, a "serious or significant physical or emotional injury resulting from the challenged conditions" or a substantial risk thereof – satisfy the objective prong of Eighth Amendment conditions-of-confinement claims); see also Thompson v. Patterson, No. 9:10–2381, 2011 WL 5024344, at *6 (D.S.C. July 14, 2011) (finding that, without evidence of a significant injury suffered as a result of the alleged conditions, a 72-hour stripping of inmate's cell and purported two month denial of a mattress did not violate the Constitution), report and recommendation adopted, No. CA 9:10-2381-TMC, 2011 WL 5024303, at *1 (D.S.C. Oct. 20, 2011); Mosley v. Bishop, No. DIV.A.07-0692-KD-M, 2009 WL 1564778, at *5 (S.D. Ala. June 1, 2009) (collecting cases finding "inmates have no absolute right to bedding or clothes under the Eighth Amendment," and finding no constitutional violation where inmate was placed for nine days in a stripped cell with only boxer shorts and a t-shirt but alleged no physical injury as a result).

Further, because plaintiff merely rests upon the allegations in his complaint, cf. Anderson, 477 U.S. at 248–49, and fails to "come forward with specific facts showing that there is a genuine issue for trial," Matsushita, 475 U.S. at 587 (emphasis and quotation omitted), he likewise fails to demonstrate that defendants acted with the requisite culpable state of mind to satisfy the subjective component of these conditions-of-confinement claims, cf. Strickler, 989 F.2d at 1379; see also Anderson, 477 U.S. at 252 (noting the "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent the entry of summary judgment); Bouchat, 346 F.3d at 522.

10

Thus, after viewing the evidence and inferences drawn therefrom in the light most favorable to plaintiff, Scott, 550 U.S. at 378, the court finds defendants are entitled to summary judgment on these conditions-of-confinement claims, see Anderson, 477 U.S. at 249; Matsushita, 475 U.S. at 587.

Alternatively, as a government officials, defendants are entitled to qualified immunity from civil damages if their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); see Pearson v. Callahan, 555 U.S. 223, 236 (2009) (finding government officials entitled to qualified immunity either when 1) plaintiff has not demonstrated a violation of a constitutional right, or 2) the court concludes the right at issue was not clearly established at the time of the alleged misconduct).

Here, reasonable officials in defendants' positions would not have recognized that their actions violated any clearly established rights. See Ashcroft v. al-Kidd, 563 U.S. 731, 743 (2011) ("When properly applied, [qualified immunity] protects 'all but the plainly incompetent or those who knowingly violate the law.'" (citation omitted)); Malley v. Briggs, 475 U.S. 335, 341 (1986) ("The *Harlow* standard is specifically designed to . . . permit the resolution of many insubstantial claims on summary judgment . . . .'"). Accordingly, defendants likewise are entitled to qualified immunity.

### Conclusion:

In sum, the court DENIES plaintiff's cross motion for summary judgment [D.E. 52], and GRANTS defendants' motion for summary judgment [D.E. 47]. The clerk shall close the case.

SO ORDERED. This __9__ day of June 2022.

*Terrence Boyle*
TERRENCE W. BOYLE
United States District Judge

11